SOPHIA P. O. MORTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89257. Promulgated August 30, 1938.

*Robert V. Jones, Esq.,* for the petitioner.
*Carroll Walker, Esq.,* for the respondent.

### OPINION.

KERN: This proceeding involves a deficiency in petitioner's income tax liability for the year 1934, determined by respondent in the sum of $4,399.24 by reason of his inclusion in petitioner's income of the income of two trusts created by petitioner for the purpose of paying premiums on certain life insurance policies covering the life of her husband, and the disallowance by respondent of $500.64 representing the payment by petitioner of certain legal expenses. With regard to this latter item, the parties have stipulated that petitioner is not entitled to deduct this sum from her gross income. Therefore, the only question for our consideration is whether respondent erred in

including the income of the two trusts in computing the net income of petitioner.

The facts were stipulated by the parties, and may be summarized as follows: Sterling Morton, the husband of the petitioner, insured his life with the Equitable Life Assurance Society of the United States for $275,000, for which policies were issued to him at various times until he held eight life insurance policies. The petitioner, wife of Sterling Morton, was designated the beneficiary to whom the life benefits were to be paid at his death. These policies also provided that the petitioner had the right to the cash surrender and loan value of each policy and the right to change the beneficiary should she so desire. These rights were vested in her and her alone.

On February 3, 1933, the petitioner created a trust and entered into a contract with the Bankers Trust Co. of New York City to act as trustee. The object of the trust was stated in the preamble thereof as follows: "The grantor desires to create a trust fund, the income of which shall be used to pay the premiums on the life insurance policies," referring to the life insurance policies on the life of Sterling Morton. Thereupon, the petitioner transferred to the Bankers Trust Co., as trustee, 1,300 shares of the common capital stock of the American Telephone & Telegraph Co., Cleveland Union Terminal bonds of the face value of $4,000, New York Central Railroad Co. bonds of the face value of $3,000, Ontario & Western bonds of the face value of $4,000, and Remington Rand, Inc., bonds of a face value of $3,000.

The income of the trust for the year 1934 was as follows: Dividends, $11,553.75; interest, $618.09; capital gains, $21,886.68, of which $7,288.03 were subject to income tax. During the same year, the trustee paid $8,203.78 as premiums on the life insurance policies, a fee to the trustee of $250, and income tax amounting to $25.56. The balance of the income was held and accumulated by the trustee pursuant to the provisions of the trust agreement. The Bankers Trust Co., as trustee, filed a fiduciary income tax return for the year 1934, showing all of the income received from the trust estate, and paid the income tax due on the return.

The trust agreement provided that, subject to the provisions of article II thereof, the trust was to terminate upon the death of the last survivor of the petitioner's husband, Sterling Morton, her daughter, Suzette Morton, and the petitioner. Article V of the trust agreement provides:

1. If the said STERLING MORTON shall at any time cause to be delivered to the Trustee a memorandum in writing, stating that the said STERLING MORTON intends to terminate the trust herein created on or after the next succeeding first day of January following the date of delivery of such memorandum, and if, on or after the next succeeding first day of January following the delivery

of such memorandum, the said STERLING MORTON shall cause to be delivered to the Trustee a second memorandum, signed by the said STERLING MORTON and stating that the said STERLING MORTON, by the delivery of such second memorandum, thereby terminates the trust herein created, then and in such event the trust herein created shall terminate upon the delivery of such second memorandum to the Trustee as aforesaid; and on such termination in accordance with the provisions of this paragraph, the Trustee shall convey, assign, transfer and deliver all accumulated income of the Trust Estate then in the hands of the Trustee, accumulated by the Trustee as hereinabove provided, and any and all investments and reinvestments thereof, to the said STERLING MORTON, and the Trustee shall convey, assign, transfer and deliver the remainder of the Trust Estate and all thereof to the Grantor, if she shall then be living, and if she shall not then be living, then to the said STERLING MORTON.

2. In the event that the trust herein created shall not have been terminated prior to the death of the said STERLING MORTON, as hereinabove provided, and in the event that the trust herein created shall continue in existence for three years following the death of the said STERLING MORTON, then from and after the expiration of three years following the death of the said STERLING MORTON, the following provisions shall be applicable: If the Grantor shall then be living, she shall have the right at any time thereafter and as long as she shall be living, to terminate the trust herein created by written notice to the Trustee, and from and after the death of the Grantor, the said SUZETTE MORTON, if she shall survive the Grantor, and so long as she shall be living, shall have the right at any time to terminate the trust herein created by written notice delivered to the Trustee. In the event that the trust hereby created shall be terminated by written notice by the Grantor as aforesaid, then upon such termination the Trustee shall convey, assign, transfer and deliver all accumulated income then in the Trustee's hands, accumulated as aforesaid, and any and all investments and reinvestments thereof to the said SUZETTE MORTON, her heirs, executors, administrators and assigns, and the remainder of the Trust Estate and all thereof to the Grantor. In the event that the trust hereby created shall be terminated by written notice by the said SUZETTE MORTON, as aforesaid, then upon such termination of Trustee shall convey, assign, transfer and deliver the Trust Estate and all thereof to the said Suzette Morton.

The trust was not otherwise revocable.

On March 5, 1934, Sterling Morton created a trust and appointed the Bankers Trust Co., as trustee, to pay the premiums on certain life insurance policies covering the life of the petitioner. In these policies Sterling Morton was the designated beneficiary with the right to the cash surrender and loan value and the sole right to change the beneficiary. The terms of this trust agreement are, for all purposes, identical with the one under consideration in this case, with the exception that the grantor of the trust and the person in whom the power to revoke was vested were reversed.

Under date of August 6, 1934, the petitioner and president and directors of the Manhattan Co., a New York corporation, entered into a trust agreement, and the petitioner delivered to the Manhattan Co., as trustee under said agreement, 200 shares of common stock of American Telephone & Telegraph Co. and $10,000 in principal amount of the 6 percent bonds of the Morton Building Corporation, a corpora-

tion. On or about the same date the petitioner delivered to the Manhattan Co. the life insurance policy described in the schedule attached to the said trust agreement which insured the life of petitioner's husband, Sterling Morton. The annual premium due on this policy was $2,228.50, while the probable annual fee of the trustee was $160.

During the year 1934 the Manhattan Co., as such trustee, received dividends in the amount of $450 and taxable interest in the amount of $299.01. The probable gross annual income of the trust from the securities held by it was $2,400, which was approximately equal to the probable annual expenditures of the trust.

Under the trust agreement with the Manhattan Co. the trust net income was payable by the trustee on the premiums on the life insurance policy described in the schedule attached to the trust agreement. The trust agreement further provided: "To insure the continued payment of premiums on the life insurance policies, the trustee is authorized to retain in its hands an undistributed balance of cash income." After the payment of premiums and the retention of a balance of cash income in such amount as the trustee might consider suitable for the future payment of premiums, the trustee was authorized to distribute any balance to the grantor if she should be living. There was no probability that any such balance would ever be available for distribution.

The trust agreement provided that the trust should continue during the life of Sterling Morton and, if the grantor should survive Sterling Morton, then thereafter until the death of the grantor or until five years had elapsed, whichever should first occur, and thereupon the trust should terminate. Sterling Morton, the husband of the grantor, was given a right of termination at any time by serving notice on the trustee. In the event of such termination by Sterling Morton, all income of the trust in the hands of the trustee was payable to Sterling Morton, and the balance of the trust was payable to the petitioner, but if she were not at that time living, then to Sterling Morton. In the event that the trust terminated five years after the death of Sterling Morton, as above stated, then the trust estate was payable to the grantor if she were living, and if she were not living, to her daughter.

The insurance policy, the premiums on which were paid by the trustee was assigned to the trustee, and the proceeds were to be held in trust by the trustee for the petitioner and/or her daughter, depending upon who was living at that time.

The right to the cash surrender or loan value of the insurance policy and the right to change the beneficiary were reserved in petitioner and/or her husband.

The first contention of respondent is that the trust income should be included in computing the net income of petitioner because a power

to revest in her title to the corpus of the trusts is vested in petitioner's husband, who was a "person not having a substantial adverse interest in the disposition of such part of the corpus or income therefrom", within the meaning of section 166 of the Revenue Act of 1934, set out in the margin.[1]

The only right to terminate the trusts was in petitioner's husband during his life. If he terminated them during the petitioner's life, the original corpus of the trusts reverted to petitioner. The rather narrow question is, therefore, presented of whether petitioner's husband had a substantial adverse interest in the corpus or income of the trusts.

Pursuant to the terms of the trusts, the income thereof was to be used by the trustee in paying the premiums due upon several policies of life insurance covering the life of petitioner's husband, all written in years prior to the establishment of the trust. In the policies held by one trust petitioner, as wife of the insured, was irrevocably named as beneficiary and as the one entitled to the cash and loan values thereof, while in the policy held by the other trust the trustee was made beneficiary thereof, and was obligated under the terms of the trust to pay over the proceeds of the policy to petitioner, if she should survive her husband, the right to any cash surrender value of the policy and to change the beneficiary thereof being reserved to petitioner and/or her husband. If the trusts were in existence at the time of petitioner's death, then upon their termination by her husband he would become entitled to all of the assets of the trusts, including both accumulated income and corpus. So long as the trusts continued during his life, the income was devoted to paying premiums on policies insuring his life for the benefit directly, or indirectly, of his wife, for whose care after death he would, naturally, feel concern and responsibility. Any excess income of the trusts which might be accumulated was payable to him if the trusts were terminated during his life. Under these circumstances, we are of the opinion that his interests were adverse to those of the petitioner as settlor of the trusts and substantially so, even though contingent in nature. *Jane B. Shiverick*, 37 B. T. A. 454. Cf. *Burnet* v. *Wells*, 289 U. S. 670. The fact that the corpus and accumulated income of the trusts might, under

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

certain contingencies, revert to the petitioner as settlor, would not, of itself, make the income of the trusts taxable to petitioner. *John Edward Rovensky*, 37 B. T. A. 702.

Respondent's second contention is that, since the petitioner directly, or indirectly, was the beneficiary under the insurance policies covering the life of her husband and was also entitled to the cash value of the policies upon their surrender, the income of the trusts which was expended in the payment of premiums on the policies was income "held or accumulated for future distribution to the grantor" and should be included in computing the net income of petitioner pursuant to the provisions of section 167 of the Revenue Act of 1934, set out in the margin.[2] Respondent cites the case of *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401, and calls our attention to general statements of principle made by the Circuit Court of Appeals in its opinion. The argument of the respondent is not without merit. However, in two cases involving facts closely similar to those of the instant case and calling for a construction of the same section of the act, we have held that the income of a trust used for the payment of premiums of life insurance policies covering the life of one other than the settlor of the trust is not to be included in computing the net income of the settlor, even though the settlor is directly, or indirectly, the beneficiary under such policies. *Lucy A. Blumenthal*, 30 B. T. A. 591; *Gail H. Baldwin*, 36 B. T. A. 364. In the absence of any direct authority to the contrary, we are not inclined to alter the views which we expressed in those two cases.

*Decision will be entered under Rule 50.*

---

[2] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction);

then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."